Thank you. May it please the court. I represent Jason Harriman who was convicted of two counts of murder for hire. He was accused of trying to hire a hit man to kill his ex-wife and her boyfriend. How this started was that a fellow inmate, Mr. Harriman was in the federal prison in Forest City, Arkansas, and a fellow inmate alleged that Mr. Harriman made the offhand comment that he wished someone would tell his ex-wife. The other inmate, Mr. Reisinger, then contacted federal authorities and they then had Mr. Reisinger tell Mr. Harriman to call this phone number and it so that's how that ensued. Prior to trial, Mr. Harriman filed two motions to have additional counsel appointed or a new counsel appointed and we believe that the district court, first the magistrate and then the district judge, did not undertake the adequate inquiry that they should have to determine if Mr. Harriman really was entitled to a new counsel. Mr. Harriman contended that his current attorney had not obtained evidence that would have approved the entrapment even more and that really... Mr. Taylor, at the first hearing, was defense counsel present? Yes. So there's a transcript and he made remarks, presumably, and commented on the relationship? He did not. That was one of the points that we make about that hearing is that defense counsel did not say much or very, very little and Mr. Harriman's motion did not say anything in particular. The magistrate judge did make some effort to flesh out what Mr. Harriman's complaints were, but Mr. Harriman basically did not have an attorney representing him in that hearing to help him articulate what his concerns were. What should the trial judge have done? He should have asked Mr. Harriman, well, what evidence should have your attorney brought up? And that wasn't done. The magistrate judge spent most of his time defending Mr. Harriman's attorney. So we think that under the case law, the court was required to do more than that. So Mr. Taylor, are you talking about the October 30th, 2018 hearing? Yes. And in that Harriman spent much of his time complaining about things that his attorney wasn't doing that were unrelated to this case. For example, he wasn't making sure that his children were coming to visit him and he was not dealing with a 2255 case that was a separate case that the attorney was not appointed to represent him on. That's true. And that's my point, your honor, is that because Mr. Harriman did not have an attorney representing him in that hearing, basically, that the court's obligation was to bring Mr. Harriman back to the relevant complaints that he initially based his motion on and should have tried to flesh out in more detail what specific relevant complaints Mr. Harriman may have had. What's your best case for the notion that the trial court with counsel there, I mean, you say he's unrepresented. I know the pragmatic reference you're making, but he is there with counsel. What case supports your view? United States versus Buck, I believe, is the one that states that the judge must make an adequate inquiry to determine whether or not the defendant has made a case that the attorney or the defendant has demonstrated a justifiable dissatisfaction with his attorney. So from that, Mr. Harriman was at a disadvantage with respect to his entrapment defense. But even so, I think that the record shows that there was entrapment. The undercover agent clearly had to, as the district court said, engage in extensive persuasion to try to get Mr. Harriman to say that he wanted his ex-wife killed. If you look at the conversations that Mr. Harriman had with the undercover agent, they're almost talking past each other. Particularly in the visit they had at the prison, the in-person visit they had at the prison, they're talking past each other. Mr. Harriman initially says, I don't know what you're talking about. And there are a couple of extended spots in the conversation during the in-person meeting where they're talking about totally unrelated things. And the ATF agent has to keep bringing Mr. Harriman talking about what the agent is trying to set him up to say. This is the inducement wrong you're talking about? Not predisposition? Right, right. Well, it seems to me the inducement, the evidence, well, the predisposition evidence is quite powerful. I know your reply brief urges us to focus on, well, if Reisinger hadn't gotten defendant referred to Williamson, this never would have happened. But there was already evidence of predisposition, it seems to me, starting with Mr. Bone years earlier. So on inducement, if the predisposition is strong, what case is held that the defendant nonetheless prevails over a jury verdict on the predisposition was strong? First of all, Mr. Bone admitted that he was trying to get some benefit for himself, and that was seven years before. Nothing happened. Well, I know, but Reisinger is the strongest on predisposition. Well, all bone simply is sort of corroborating or confirming that Reisinger was in fact told by defendant I want to get my wife killed. Well, that's if you believe Reisinger. We have to. We're reviewing a jury verdict. Well, I don't know if that necessarily means you have to believe Reisinger. We have to accept that the jury did. That's the problem with these jury verdict review issues. Once the entrapment instruction is proper, if there's evidence for the jury to find predisposition, what case is reversed a verdict based on the inducement problem? I haven't researched that. United States versus Dionne, for one. I think the Dionne case is very persuasive here because Dionne was a case where there was no ongoing conduct like a drug dealer or something like that, and the court did reverse the Dionne conviction on the basis of entrapment. I see my initial time is up unless you have some more questions. Very good. Mr. Morfitt? May it please the court. Anthony Morfitt on behalf of the United States. The court in prior argument hit upon the issue here. A jury verdict did not lightly overturn. In this case, the jury was instructed as the defendant asked that they be on entrapment. There are no evidentiary issues under appeal. The only appeal pending for the trial portion is sufficiency of the evidence, and here the evidence was more than sufficient, and this court should not overturn this jury verdict. Focusing first on the issue of predisposition, there is significant evidence of the defendant's predisposition to commit the crime of murder for hire as it pertains to his ex-wife and who he believed to be his ex-wife's current boyfriend. There's not only Jonathan Bone back in 2012 who testified that the defendant was looking for somebody to murder his ex-wife back then because she was dating a different man and he was angry with her. There's also predisposition evidence that was admitted before the court to the jury of the defendant's criminal history, which was replete with violence towards his then wife or girlfriend who then became his ex-wife. The violence and wanting to hurt her is something that he had done for years and years, and that evidence was properly admitted before the jury, and then the jury did believe William Reisinger, it appears, and the evidence predisposition is there from Mr. Reisinger's testimony where the defendant approached him and asked him if he could find someone to kill his ex-wife. And that predisposition is strong throughout the evidence that was presented. There was also no inducement here. While the agent talked to the defendant on multiple occasions, each of those contacts was initiated by the defendant, either via email or phone calls. There were 13 recorded phone calls played for the jury, and each of them was played in nearly its entirety to the jury. The defendant initiated each of those calls because he was in prison at the time. The defendant agreed that the undercover agent should come meet with him in person in the prison, and they met for approximately an hour and a half to two hours in a recorded video and audio recorded meeting. It was also played for the jury in excruciating detail. Essentially the entire thing was played for the jury. And yes, while the defendant initially says he doesn't know what they're there to talk about, because as you can see and hear in the evidence, he's paranoid. He's had experience with law enforcement before. He fears that he may be dealing with law enforcement. He asked the undercover agent if he's wired or wearing a wire. The agent shows he's not. The defendant is paranoid and using this coded language that they've been using all along on telephone calls and on emails about properties and demolition. But strikingly, at the very end of this conversation... Let me just ask, where was the meeting? He was in custody? It was in a jail or prison? Yes, Your Honor. It was at the federal prison that Mr. Harriman was confined in as a result of a prior federal firearms conviction. So they were meeting in the visiting room of that prison. It doesn't matter whether Williamson is wearing a wire, someone with his criminal history experience was likely to assume it's going to be recorded at least, right? Potentially. The room, if you look at the video, the room is a very wide open bay. So it's possible he didn't consider the possibility that they could focus a camera and audio on him. And the audio was actually captured by a mic that the agent was wearing, just didn't show that particular location to the defendant when asked about it. But at the end of this conversation, the defendant clearly knows what's going on. He's not talking about buying properties and demolishing them to build businesses. He talks about doing it in the minivan way, which was, as they discussed, making it look like an accident involving the minivan, catching on fire, and then shooting two individuals, defendant one killed. While they talk in coded language for much of it, there are moments in there that you can tell the defendant knows exactly what they're talking about, and there's no doubt about it. And then following this in-person meeting, the defendant again initiates contact with the undercover by calling him. And in one of those calls, he asks the defendant to have it, or asks the undercover agent, to have it recorded, clearly indicating he wants the death of his wife and her boyfriend, ex-wife and her boyfriend to be recorded. But the evidence was more than sufficient for the jury, and this court should not overturn that verdict. And there was more than enough evidence to overcome the entrapment defense to show both that there was no inducement, there was predisposition. Unless the court has any further questions on the entrapment issue, I'll move briefly to the motion for new counsel. The defendant made two motions for new counsel, one in October 2018, and one approximately five days before trial, or five or six days before trial in January of 2019. The October 2018 motion was heard by the magistrate judge, and the transcript there shows that the judge talked to the defendant in significant detail, and heard the defendant's concerns. As this court noted, many of those concerns were unrelated to the criminal trial. The ones that were related to the criminal trial were tactical decisions. What witnesses to interview, what evidence to gather and present. And those tactical decisions are, of course, reserved to the defendant's attorney rather than the defendant himself. Well, not if the attorney is doing no preparation. That's an issue that should be explored. There is, and your honor, but the record is very full of information that the defendant was preparing. This is a defense attorney that is well familiar to both the magistrate judge and the district court judge. I believe both of them said there's no attorney they would rather have representing them in a criminal matter in our district than this attorney. But beyond that, this attorney filed multiple motions. He sought and successfully received the entrapment instruction. He met and interviewed numerous witnesses, including a witness the government ultimately called Aloha Whitley, and he was thoroughly preparing. The defense admitted, I don't recall how many exhibits, but most of their exhibits were snippets from the recorded phone calls the government had admitted. The defense attorney went through and snipped out the parts he thought were best for his client and admitted those separately for use in his case. The record is replete with examples of how this defense attorney was preparing the trial, just not necessarily the witnesses that this defendant wanted. Frankly, the witnesses the defendant wanted were irrelevant to trial. He wanted the defense attorney to contact people from decades ago and would not have information about this trial, and their testimony would not have been allowed anyway. Turning to the second motion for new counsel in January, it's true that the judge in that case and the district court judge approximately five days before trial only asked the defendant a couple of questions throughout, but he did read the motion. He actually read it into the record during the hearing, and he also indicated he had gone back and listened to the recording from the October hearing on the first motion. So the judge was well aware of what issues the defendant had with his attorney. And as far as the defense attorney not speaking in either of these hearings in any great length, it's actually discussed in the January hearing that this defense attorney generally does not speak during hearings for new counsel because he doesn't want to do anything to prejudice his client. So he does not say anything during the hearings by design, and our court is supportive of that. Unless the court has any further questions on either of these, on any of the issues at present in this case, the government would yield the balance of its time. But let me ask, was self-representation raised in either of the motions? Not at that time, your honor. This is the defendant who he actually had represented himself at his prior federal trial off and on, and he ended up representing himself for sentencing. I believe Judge Roberts, the magistrate judge in the October hearing may have broached the topic of self-representation briefly, but I don't believe it came up at all in the January hearing. In the January hearing, did Mr. Harriman, besides new counsel, what other relief did he want five days before trial? I believe that was it, your honor. He did talk potentially about a continuance. But that was inevitable. Yes, your honor, if you've been granted new... I knew it turned out... Did the district court point that out? He did. This was eve of trial, and we're going to go to trial? He did, your honor. He pointed out that not only was this the eve of trial, but this trial had been continued twice before, and that it was time to go to trial, and that he would not be granting any motions for continuance. So Mr. Morfitt, in the April 3 of 19 hearing, post-trial for new counsel, the magistrate judge does bring up self-representation and walks through. Do you know the rules of procedure? Do you know the guidelines? Are you familiar with this? And they have a colloquy about that. Was it error for the magistrate judge not to bring that up in the October 30 of 2018, or for the district judge not to bring it up in the January of 2019 hearing? I do not believe it was error, your honor. The defendant had only asked for new counsel. He had not broached or requested relief of pro se representation, and I don't believe there was any duty upon the court to sua sponte, bring up the possibility of self-representation. But what's your best case on that point? Your honor, I do not have one off the top of my head. I can certainly look into it and follow-up letter to the court. I don't think you need to do that. These cases are pretty legion. Yes, your honor. Unless there are any further questions, I will yield the balance of my time. Very good. Thank you. Mr. Taylor, let's see. There you've got the four plus minutes for rebuttal. Okay. Thank you. Let me address the issue of Mr. Harriman's motion for new counsel. The point, I think, is that in those first two hearings in October and January, prior to trial, as we've discussed, Mr. Harriman was, for practical purposes, without an attorney, and he was not articulate enough, was not knowledgeable enough about the legal requirements for asking for a new attorney, and that's why he was at a disadvantage. But counsel, this is a man who represented himself in a prior criminal trial. I'm not sure how well he did. They never do as well as they think they can, but that's either here or there. That's right. That's why it's important for the court to undertake that adequate inquiry that the case law requires. But motions that Mr. Harriman filed after trial, when he had more time to think about it, perhaps, when he could see what had happened at the trial, he fleshed out his concerns more thoroughly. In his first motion for a new trial, he said the witnesses that should have been called would have provided testimony that the communication with the undercover agent was about obtaining property for a business, which is what Mr. Harriman's defense was, and if you look at the conversations between Mr. Harriman and ATF undercover agent, as I said, they were kind of talking past each other. Mr. Harriman was talking about getting property to start a business and build a rec center. Once he got out, Mr. Morford, of course, said that was just a ruse, but there's nothing in the record to indicate that. Counsel, didn't the district court specifically find that Mr. Harriman lied and he specifically found that Mr. Harriman's testimony was not credible and that there was no support for it whatsoever? Well, there was no support because Mr. Harriman had not been allowed to bring in the additional evidence that he would have wanted to have presented if he'd had a new attorney and the attorney had brought in the evidence Mr. Harriman described in his post-trial motion. Is there any evidence in the record, is there anything in the record to suggest that this evidence that Mr. Harriman wanted to bring in would have actually corroborated any of this story? Well, Mr. Harriman's motions, the post-trial motions indicate that. Now we're into 2255 area, aren't we? I mean, you're saying that the things that were revealed in a post-verdict hearing demonstrate the ineffective assistance that he couldn't articulate pre-trial. That's classic 2255 stuff. Well, except for the fact that what we're trying to show here is what Mr. Harriman would have presented at the pre-trial motions if he had been allowed to expand on that or if he had been questioned about that, the court would have brought that information out. Mr. Taylor, at the very beginning of the final hearing on his motion shortly before trial, I think the judge opened the hearing by asking if he had anything else he wanted to talk about outside of the motion. What more should the court have done? Well, the motion, again, was perhaps a little more expansive than the original one, but certainly not very explicit. And again, the court should have asked Mr. Harriman exactly what the attorney was not doing, what evidence he thought the attorney should have brought in, how that would have been relevant to the issue of the entrapment. But in that January hearing, actually the court, other than that maybe initial general statement, didn't allow Mr. Harriman to say anything, didn't ask him any questions. He simply said, I don't see anything here. We're going to go to trial. Well, I think didn't the court entitle to infer that this is a de facto eve of trial continuance request? Because that is a practical matter is what it was. That certainly inferred, Your Honor, yes, because if he had gotten a new attorney, I'm sure that would have been justification for continuance. I think my time is up. Very good. Very good. Well, that argument has been helpful and the case has been thoroughly briefed. We will take it under advisement. Thank you.